UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL JAMES FELLNER,

                              Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        18-CV-286S

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

1.      Plaintiff Daniel James Fellner challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that he has been disabled since December 1, 2013, due to back pain and anxiety.  Plaintiff contends that his impairments render him unable to work, and thus, that he is entitled to disability benefits under the Act.

2.      Plaintiff applied for Title II Social Security Disability ("SSD" or "DIB") benefits on May 2, 2014, alleging a disability onset date of December 1, 2013.  The Commissioner denied his claim on August 1, 2014.  Almost three years later, on January 1, 2017, ALJ Eric Glazer held a hearing at which Plaintiff appeared with counsel and testified.  Thereafter, on May 12, 2017, the ALJ denied Plaintiff's application for SSD benefits.  Plaintiff then sought review by the Appeals Council, which denied his request on December 29, 2017.  Plaintiff timely filed the current action on February 23, 2018, challenging the Commissioner's final decision[1].

---

[1] The ALJ's May 12, 2017 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3.      On October 15, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 11.)  On December 10, 2018, Defendant filed a Motion for Judgment on the Pleadings.  (Docket No. 14.)  Plaintiff filed a reply on December 28, 2018, at which time this Court took the motions under advisement without oral argument.  (Docket No. 15.)  For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case is remanded to the Commissioner for further proceedings.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen,

859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform

his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since December 1, 2013, the alleged onset date (R. at 16[2]); (2) Plaintiff's degenerative disc disease of the lumbar spine is a severe impairment (Id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the C.F.R. (R. at 17); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. 404.1567(b)[3] and; (5) Plaintiff is capable of performing past relevant work ("PRW") as a

---

[2] Citations to the underlying administrative record are designated as "R."

[3] "Light" work involves lifting no more than 20 pounds at a time occasionally, with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight carried may be very little, a job is

customer meeting service/electric meter installer (R. at 19). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period.

10.    Plaintiff argues that remand is required because the ALJ failed to properly evaluate his credibility. This Court agrees for two reasons: the ALJ failed to properly consider Plaintiff's activities of daily living and failed to afford substantial credibility to Plaintiff's testimony based on his long work history. Remand is therefore required to allow for a proper credibility determination.

11.    Credibility determinations are generally reserved to the Commissioner, not the reviewing court. See Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the Commissioner, not the reviewing court, who determines witness credibility); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar). The ALJ must assess the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence concerning the extent of pain, limitations of function, or other symptoms alleged. See Paries v. Colvin, No. 5:11–CV–0478 (LEK/ATB), 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing Snell, 177 F.3d at 135).

12.    The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the

---

in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. If someone can do light work, he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

> claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see 20 C.F.R. §§ 404.1529, 416.929.

13.     In evaluating an individual's symptoms,

> adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, . . . adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . .

SSR, 16-3P at *10.

14.     "At the first step in the credibility analysis, plaintiff's allegations need not be substantiated by medical evidence, but simply consistent with it. The entire purpose of section [ ] 404.1529 . . . is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." Hogan v. Astrue, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007) (internal citations omitted); see also 20 C.F.R. § 404.1529(c) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions . . . , which can be reasonably accepted as consistent with the objective medical evidence and other evidence, will be taken into account."). "Only allegations beyond what is substantiated by medical evidence are subjected to a credibility analysis. To require plaintiff to fully substantiate his symptoms

would be both an abrogation of the regulations and against their stated purpose." Hogan, 491 F. Supp. 2d at 353 (citing Castillo v. Apfel, No. 98 Civ. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)).

15.     If the ALJ determines that the claimant is impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.  See Genier v. Astrue, 606 F.3d 46, 49 (E.D.N.Y. 2010); see also Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (finding claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

16.     If a claimant's contentions are not supported by objective medical evidence, the ALJ must then consider the following factors to determine the claimant's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii),

416.929(c)(3)(i)-(vii); SSR 16-3p, at *7; <u>Meadors v. Astrue</u>, 370 F. App'x 179, 184 n.1 (2d Cir. 2010); <u>see also</u> <u>Murphy v. Barnhart</u>, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10-11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)). "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" <u>Lewis v. Apfel</u>, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting <u>Gallardo v. Apfel</u>, Civ. No. 96–9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

17.     Here, at the first step of the credibility analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 19). But at the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," which are the reasons Plaintiff challenges. (<u>Id.</u>)

18.     The ALJ discounted Plaintiff's testimony on the basis that "[he] has considerable activities of daily living, including reports that he belonged to a gym and performed moderate exercise, including bicycling, cross country skiing, some kayaking, swimming, and some golf." (R. at 23.) But careful review of the record reveals that Plaintiff's daily activities at the time of his hearing were much more limited due to the degenerative nature of his condition.

19.     To begin, the record demonstrates that Plaintiff's physicians told him to exercise and remain as active as he could. (R. at 332.) Plaintiff also understood that

regular exercise and weight management was important in alleviating his back pain. (R. at 36-37.) In addition, Plaintiff testified that he did *not* belong to a gym, which, in any event, would not necessarily be indicative of a non-disabling condition. (R. at 39.) And contrary to the ALJ's findings that Plaintiff could ski, kayak, and golf, Plaintiff testified that, "I can't ski or golf anymore." (R. at 36, 39, 54.) He further testified that "anything on his feet, standing, anything" causes him back pain. (R. at 38.) When asked about kayaking and golf, he responded, "Oh, I want to do them, but I can't." (R. at 52, 54.) The ALJ's findings were based on outdated reports from years before the hearing. The ALJ's conclusions were therefore not a fair assessment of plaintiff's physical abilities and not supported by substantial evidence in the record

20.     Plaintiff's history of back pain is extensive, evidenced by two lumbar fusions dating back to 1989 and 1991. (R. at 36.) On September 24, 2013, Plaintiff's X-ray and CT scans showed damage at six levels throughout his lumbar and thoracic spines. (R. at 189-91.) Dr. Kevin Gibbons opined that, "he has fairly impressive imaging that is certainly consistent with his previous problems. He has adjacent level problems now as well of a mild degree. It does explain his symptoms reasonably well." (R. at 193.) Subsequent EMG testing showed bilateral L3 radiculopathy, which supports Plaintiff's reports of radiating pain down his legs. (R. at 314-15.) Further, Dr. Michael Landi and Dr. Craig Burns both believed surgery would be appropriate based on Plaintiff's conditions and symptoms. (See R. at 313; 302.) This objective medical evidence supports Plaintiff's subjective reports of pain.

21.     As indicated above, Plaintiff testified that he biked and swam for exercise. (R. at 37.) Both activities accommodated his medical conditions: biking, which he could

tolerate for only 30-minute increments, allowed him to sit upright; swimming took "all the pressure" off his spine. (R. at 58.) The severity of Plaintiff's pain fluctuated between mild and severe depending on his on-the-feet activity, with walking, standing still, and not moving causing him the most severe pain. (R. at 38.) Formerly quite active, Plaintiff testified that his deteriorating back condition forced him to discontinue many of the physical activities he once enjoyed. (R. at 52-53). Cycling and swimming were two activities he could tolerate, but there is no evidence in the record that Plaintiff's exertion during these activities was strenuous or consistent with an ability to engage in substantial gainful activity. See Harris v. Colvin, 149 F. Supp. 3d 435, 444-45 (W.D.N.Y. 2016) ("There is a critical difference between activities of daily living (which one can do at his own pace when he is able) and keeping a full-time job."); see also Henderson v. Berryhill, 312 F. Supp. 3d 364, 370 (W.D.N.Y. 2018).

22. In addition to Plaintiff's daily activities, the ALJ concluded that Plaintiff's treatment notes failed to support his allegations of disabling symptoms. (R. at 23.) The ALJ referenced the strength in Plaintiff's lower extremities and noted that Plaintiff could reportedly squat, change his clothes, navigate an examination table, and rise from a chair, all without assistance. (R. at 23-26.) These observations conflict with Plaintiff's testimony concerning his general ability to function, but that notwithstanding, these isolated observations do not, by themselves, support a finding that Plaintiff is not disabled or has no limitations on standing, walking, lifting, or bending. See Harris, 149 F. Supp. 3d at 444-45. Remand is therefore required for a proper credibility determination.

23. Finally, the ALJ's credibility determination must be reversed because he failed to consider and discuss Plaintiff's long employment history. "A claimant with a good

work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Sec'y of Health, Educ. and Welfare, 623 F.2d 217, 219 (2d Cir. 1980)); see also Maggio v. Heckler, 588 F. Supp. 1243, 1246 (W.D.N.Y. 1984); Patterson v. Chater, 978 F. Supp. 514, 519 (S.D.N.Y. 1997); Nelson v. Barnhart, No. 01-Civ-3671, 2003 WL 1872711, at *7 (S.D.N.Y. April 10, 2003). This is because a claimant with an established history of employment is unlikely to be "feigning disability." Patterson, 978 F. Supp. at 519. As the courts in this circuit have recognized, the failure to consider a claimant's work history in an evaluation of his or her credibility is "'contrary' to the law in this circuit and the SSA's rulings." Pena v. Barnhart, No. 01 Civ. 502, 2002 WL 31487903, at *13 (S.D.N.Y. Oct. 29, 2002) (quoting Montes-Ruiz v. Charter, 129 F.3d 114 (Table) (2d Cir. 1997)).

24.     Plaintiff has a 36-year work history, which he had to end prematurely because of the deteriorating condition of his back. (R. at 32-33.) Because of his work history, the ALJ was required to either afford "substantial credibility" to Plaintiff's claim that he was unable to work because of his disability, or specifically state in his decision why Plaintiff was not credible despite his work history. Rivera, 717 F.2d at 725. But the ALJ neither discussed Plaintiff's work history nor indicated what weight, if any, he afforded it. The credibility finding therefore does not comply with the governing case law.

25.     Because the ALJ's credibility finding is both unsupported by substantial evidence and legally deficient, this Court will remand this case for further proceedings consistent with this decision. Plaintiff's Motion for Judgment on the pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      October 1, 2019
            Buffalo, New York




                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge